## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**RICHARD MWAREPUE,**<br><br>Defendant. | CRIMINAL CASE NO. **CM0057-24**<br><br>**DECISION AND ORDER** |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on November 22, 2024, for hearing on Defendant Richard Mwarepue's ("Defendant") Motion to Suppress. Present were Assistant Attorney General Kathleen O'Neil on behalf of the People of Guam ("the Government") and Defendant with counsel, Deputy Public Defender John P. Morrison. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On February 17, 2024, Defendant was charged with (1) Driving While Impaired (As a Misdemeanor); (2) Driving While Impaired (BAC) (As a Misdemeanor); and (3) Leaving the Scene with Propety Damage (As a Petty Misdemeanor). (Magistrate's Compl., Feb. 17, 2024). These charges stem from alleged events occurring the morning of February 17, 2024. *Id.*

On October 7, 2024, Defendant filed a Motion to Suppress. On October 11, 2024, the Government filed its Opposition.

On November 22, 2024, the Court heard sworn testimony from Guam Police Department ("GPD") Officer Joseph Mansapit ("Officer Mansapit"). The Court ascertained the following facts:

1. On Saturday, February 17, 2024, Officer Mansapit was at Central Precinct when he received a radio call about a hit and run around 6:20 a.m. A two-auto collision occurred by Route 10 near Father Duenas Memorial School ("FD"). The operator of a Blue Kia fled the scene towards FD. The operator was a male individual who smelt like an intoxicating beverage. There was no description provided regarding the age, race, or clothing of the individual because it was "dark".

2. Officer Mansapit arrived on scene around 6:30. He was the second officer to arrive. Officer Gabutan was the first officer to arrive on the scene and he met with the other driver involved in the accident. Officer Mansapit stopped at the scene briefly to speak with Officer Gabutan. Officer Gabutan pointed out the direction where the operator fled the scene. Officer Mansapit did not interact with the other driver at the scene.

3. The two vehicles involved in the crash were on Tai Road across FD. One vehicle was in the grass area and one vehicle was on Tai Road. Officer Mansapit began searching the immediate area. The area was still dark.

4. As Officer Mansapit made his way to Sabanan Magas Street, he noticed two male individuals sitting in a bus stop. Officer Mansapit testified that the individuals looked to him at that time to be in their early twenties. Officer Mansapit testified he did not observe any other individuals in the area.

5. Officer Mansapit parked directly in front of the bus stop so that the headlights illuminated the bus stop. Officer Mansapit testified that the take down lights in the front of his vehicle (a white light) were also activated.

6. Officer Mansapit approached the two individuals at the bus stop to inquire if they were okay. Officer Mansapit testified that they were not sitting right next to each other. One individual was sitting towards the left and the other was sitting on the far-right corner of the bus stop.

7. Officer Mansapit did not see any other vehicle near the bus stop.

8. Officer Mansapit observed one of the male individuals avoiding eye contact with him, while the other male individual answered his questions.

9. Officer Mansapit testified that the individual responding to him stated they were fine.

10. Officer Mansapit flashed the male individual who was not responding to his questions and noticed a large set of keys halfway out of his pocket. Officer Mansapit asked the individual, later identified as Defendant, if he could see the keys, to which he complied and stated "he fucked up."

11. Officer Mansapit asked him what that meant to which the individual responded "he crashed the car."

12. When Officer Mansapit looked at the keys, he noticed there was a key fob for a Kia vehicle. Officer Mansapit did not notice the key fob until he was handed the keys. When Officer Mansapit saw keys hanging out of Defendant's pocket earlier, the key fob was inside Defendant's pocket.

13. Officer Mansapit testified that while he was asking Defendant questions, he could smell an intoxicated beverage emitting from his breath; that he had red watery eyes; and that his speech was slurred.

14. Officer Mansapit placed him under arrest, advised him of his rights and inquired if he would submit to a field sobriety test. Defendant declined.

15. Officer Mansapit transferred him to the police statement and advised him of his rights. Defendant consented to a breath test sample and Officer Mansapit administered a breathalyzer test.

16. Officer Mansapit testified that if the individuals had run away from him after he approached, he would have been surprised but would not have chased after them because he would not know which one to chase after. Officer Mansapit also indicated that if only one individual ran away when he approached, he would have likely chased after him.

# DISCUSSION

Defendant moves the Court to suppress all evidence seized from the warrantless search of his person, the seizure of his car keys, and any subsequent statements or confession. *See generally,* Mot. Suppress, Oct. 7, 2024. The Government opposes, arguing that the Fourth Amendment was not implicated because Defendant was not seized during the initial interaction, or alternatively, the exceptions of voluntary consent and plain view applied. *See generally,* Opp'n, Oct. 11, 2024.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf,* 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson,* 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio,* 392 U.S. 1 (1968)). "The reasonable suspicion necessary to justify an investigatory stop is dependent upon both the content of information possessed by police and its degree of reliability." *Id.* at ¶ 5 (citation and internal quotation marks omitted).

The Fourth Amendment, however, is not implicated in every situation where police officers have contact with an individual. *See Florida v. Bostick,* 501 U.S. 429 (1991). The protection against unreasonable searches and seizures is not implicated "simply because a police officer approaches an individual and asks a few questions." *Id.* at 434. *See also Chargualaf,* 2001 Guam 1 ¶ 20 ("Investigative questioning regarding criminal activity does not, in itself, implicate the Fourth Amendment."). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick,* 501 U.S. at 434. (citing *Terry v. Ohio,* 392 U.S. 1, 19, n.16 (1968)).

When examining whether an encounter between police and a citizen constitutes a seizure under the Fourth Amendment, "a court must consider all the circumstances surrounding the

encounter to determine whether the police conduct would have communicated to a *reasonable person* that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439 (emphasis added). *See also People v. Cundiff,* 2006 Guam 12 ¶ 21. The reasonable person test presupposes an *innocent* person. *Bostick,* 501 U.S. at 438. (emphasis added). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980) (internal citations omitted). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado,* 466 U.S. 210, 216 (1984).

In this case, Defendant was approached by Officer Mansapit while he was sitting at a bus stop with another male individual. Officer Mansapit approached them to ask them if they were okay. Officer Mansapit testified this was a Saturday morning, it was still dark, and he was looking for the operator who fled a car crash scene nearby. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry,* 392 U.S. at 22. Although Officer Mansapit had several lights from his police vehicle pointed towards the bus stop, the Court also notes that Officer Mansapit was the only officer present at this time and there was no testimony that he had his weapon drawn during this encounter, that he physically restrained Defendant, or used a language or tone of voice indicating compliance with his requests might be compelled. *See Mendenhall,* 446 U.S. 544 at 555. Officer Mansapit also testified that if both individuals had fled the scene upon his approach to the bus stop, he would not have chased after them because he would not know which individual to specifically chase after. While Officer Mansapit later stated that if only one of the two individuals ran away as he approached then he

would chase after the lone individual, the Court notes that the reasonable person test under *Bostick* presupposes an innocent person. *Bostick*, 501 U.S. at 438. Accordingly, the Court does not find the Fourth Amendment was implicated and Defendant seized when he voluntarily agreed to hand over his keys and made his statements. The Court finds that the initial interactions between Defendant and Officer Mansapit constituted a consensual encounter that did not implicate the Fourth Amendment. Therefore, the Court denies Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. Parties shall return for a Status Hearing on February 25, 2025 at 10:00 a.m.

**IT IS SO ORDERED** this 4th day of February, 2025.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. Mwarepue*
Case No. CM0057-24
Decision and Order